UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITA 4 LIFE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYNOSURE, INC., <br><br> Defendant. | Case No. 17-cv-11435 (Consol.) <br><br> Hon. Denise J. Casper |
| PLASTIC SURGERY ASSOCIATES, S.C., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CYNOSURE, INC., <br><br> Defendant. | Case No. 17-cv-11850 (Consol.) <br><br> Hon. Denise J. Casper |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
DEFENDANT CYNOSURE, LLC'S MOTION FOR SUMMARY JUDGMENT**

The following facts, as set forth in the pleadings, depositions, interrogatories, and documents produced in this litigation, are undisputed.

**A.    THE SCULPSURE DEVICE AND CONTRACT OF SALE**

1. Cynosure, LLC (f/k/a Cynosure, Inc.) ("Cynosure") is a medical device manufacturer that markets and distributes the SculpSure Noninvasive Body Contouring System ("SculpSure"), the first FDA-cleared medical device to use lipolysis for non-invasive fat reduction. *See* Declaration of Jocelyn A. Wiesner In Support of Cynosure, LLC's Motion for Summary Judgment ("Wiesner Decl.") ¶ 2, Ex. 1 (SculpSure 04088-93, at 90-91).

2. The SculpSure is a diode laser system that works by delivering laser energy to subcutaneous fat tissue, which causes apoptosis (death) of fat cells. *Id.* ¶ 2, Ex. 1 (SculpSure 04091).

3. Since launching SculpSure in 2015, Cynosure has sought and received FDA clearance to market SculpSure for five separate indications: non-invasive fat reduction of the flanks, abdomen, thighs, back, and submental (chin) areas of the body. *See id.* ¶¶ 2-5, Ex. 1 (SculpSure 04088-93 – flanks); Ex. 2 (SculpSure 04082-87 – abdomen); Ex. 3 (Cyno_SS_00344241-46 – thighs and back); Ex. 4 (Cyno_SS_00352052-57 – submental).

4. Each one of these FDA clearances was supported by a separate, independent clinical study, demonstrating the efficacy of SculpSure for non-invasive fat reduction in that region of the body, and measuring the tolerability of the procedure when performed on that body area. *Id.* ¶¶ 2-5, Ex. 1 (SculpSure 04092-93); Ex. 2 (SculpSure 04086-87); Ex. 3 (Cyno_SS_00344245-46); Ex. 4 (Cyno_SS_00352056-57).

5. Each of the named Plaintiffs entered into a contract with Cynosure for the purchase of a SculpSure device. *See, e.g.*, Compl. (ECF No. 1) ¶ 11 (Plastic Surgery Associates, S.C.); ¶ 13 (Green Chrysalis Enterprise LLC, a/k/a Face Place); ¶ 14 (Renew Skin & Laser Centers LLC, a/k/a Dermacare); ¶ 15 (Arizona Advanced Aesthetics, PLLC, a/k/a Enhanced Image); ¶ 16 (Advanced Health Weight Loss, S.C., a/k/a Options Medical). *See also* Wiesner Decl. ¶¶ 6-10, Ex. 5 (Cyno_SS_00563726-27 – Options Medical); Ex. 6 (Cyno_SS_00563788-90 – Dermacare); Ex. 7 (Cyno_SS_00563845-46 – Plastic Surgery Associates); Ex. 8 (Cyno_SS_00563879-80 – Face Place); Ex. 9 (Cyno_SS_00563759-64 – Enhanced Image).

6. Each of the purchase agreements signed by the named Plaintiffs contains the following language above the signature line on the first page:

> ACCEPTANCE OF AGREEMENT
>
> By signing below, the Customer (i) is representing to Cynosure, Inc. ("Cynosure") that it has the requisite corporate authority to execute and deliver this Customer Purchase Agreement ("Agreement") and has the required licensing from the applicable state medical review board to operate the Product purchased by this Agreement, and (ii) is entering into a binding agreement for the purchase of the Product and/or services described above and accepts all of the terms and conditions as stated in this document (including the following page(s)), and (iii) hereby acknowledges receipt and understands the content of the Cynosure Minimum Advertised Price Policy. This Agreement is subject to Cynosure's terms and conditions of sale contained or referred to herein and the Customer expressly disclaims any additional and/or different terms and conditions or any terms and conditions on the Customer's purchase order. Federal law restricts the sale of the products to a licensed practitioner.

Wiesner Decl. ¶¶ 6-10, Ex. 5 (Cyno_SS_00563726); Ex.6 (Cyno_SS_00563788); Ex. 7 (Cyno_SS_00563845); Ex. 8 (Cyno_SS_00563879); Ex. 9 (Cyno_SS_00563759).

7. In the Complaint, each of the named Plaintiffs also quotes the choice-of-law provision that appears on the second page of their respective agreements to purchase the SculpSure device. *See, e.g.*, Compl. (ECF 1) ¶ 11 (Plastic Surgery Associates); ¶ 13 (Face Place); ¶ 14 (Dermacare); ¶ 15 (Enhanced Image); ¶ 16 (Options Medical).

8. The second page of the purchase agreements entered into by the respective named Plaintiffs contains the following capitalized text, directly above the choice-of-law provision.

> (A) "THE OBLIGATIONS OF CYNOSURE UNDER THIS WARRANTY ARE LIMITED, IN ITS EXCLUSIVE OPTION, TO REPAIR OR REPLACE PARTS AND MATERIALS WHICH PROVE TO BE DEFECTIVE."
>
> (B) "THE FOREGOING WARRANTIES ARE THE SOLE AND EXCLUSIVE WARRANTY OBLIGATIONS OF CYNOSURE, AND THE REMEDY PROVIDED ABOVE IS IN LIEU OF ANY AND ALL OTHER REMEDIES. THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING, WITHOUT LIMITATION, WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CYNOSURE SHALL NOT BE LIABLE FOR LOST PROFITS OR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES DUE TO ANY CAUSE WHATSOEVER EVEN IF ADVISED AS

TO THE POSSIBILITY OF SUCH DAMAGES. THE CUSTOMER AGREES THAT CYNOSURE'S LIABILITY IS SO LIMITED."

*See* Wiesner Decl. ¶¶ 6-10, Ex. 5 (Cyno_SS_00563727); Ex. 6 (Cyno_SS_00563790); Ex. 7 (Cyno_SS_00563846); Ex. 8 (Cyno_SS_00563880); Ex. 9 (Cyno_SS_00563760).

9. In the Complaint, Plaintiffs also rely on the choice-of-law provision that appears on page 2 of their respective purchase agreements as the basis for the Court's jurisdiction and venue, *see* Compl. ¶ 18, and as a reason why a nationwide class should be certified. *Id*. ¶ 128.

**B.   ARIZONA ADVANCED AESTHETICS (d/b/a ENHANCED IMAGE)**

10. Arizona Advanced Aesthetics, PLLC ("Enhanced Image") is a medical spa located in Arizona.  Compl. ¶¶ 15, 100.

11. The owner of Enhanced Image is Jennessa Iannitelli.  Wiesner Decl. ¶ 11, Ex. 10 (Iannitelli Depo. Tr. 14:8 – 15:1).

12. Enhanced Image purchased a SculpSure device from Cynosure on January 29, 2016.  Wiesner Decl. ¶¶ 11-12, Ex. 10 (Iannitelli Depo. Tr. 62:8 – 63:3); Ex. 9 (Enhanced Image Purchase Agreement) (Cyno_SS_00563759-64); Ex. 11 (Enhanced Image Responses to Defendant's First Set of Interrogatories, at No. 14).

13. Iannitelli signed the purchase agreement for the SculpSure on behalf of Enhanced Image.  Wiesner Decl. ¶¶ 10-11, Ex. 10 (Iannitelli Depo. Tr. 62:8 – 63:3; 64:19 – 65:14); Ex. 9 (Enhanced Image Purchase Agreement (Cyno_SS_00563759-64).

14. Prior to signing the purchase agreement, Iannitelli read the purchase agreement, including the warranty limitation section on the second page.  Wiesner Decl. ¶ 11, Ex. 10 (Iannitelli Depo. Tr. 63:4 – 64:14; 65:11 – 65:17).

15. Enhanced Image first learned of SculpSure from Cynosure sales representative Sharon Knecht near the end of 2015, when Knecht visited the offices of Enhanced Image, in Arizona. Wiesner Decl. ¶ 13, Ex. 12 (Janitell Depo. Tr. 27:3 – 27:18).

16. After the initial in-person meeting, Knecht and Cynosure sales representative Justin Thompson also provided additional information regarding SculpSure to Iannitelli and Karen Janitell at a luncheon at a PF Chang's restaurant in Glendale, Arizona. Wiesner Decl. ¶¶ 13, 11, Ex. 12 (Janitell Depo. Tr. 34:14 – 38:1); *id*. at Ex. 10 (Iannitelli Depo. Tr. 28:3 – 28:25).

17. In January of 2016, Cynosure sales representative Thompson sent Iannitelli, who was located in Arizona, an email containing links to additional information about Cynosure. Wiesner Decl. ¶ 13, Ex. 12 (Janitell Depo. Tr. 43:18 – 45:11).

18. After the luncheon at PF Chang's, Iannitelli had several additional in-person meetings with Cynosure sales representatives Knecht and Thompson, again at the Enhanced Image's office in Arizona. Wiesner Decl. ¶ 11, Ex. 10 (Iannitelli Depo. Tr. 27:10 – 29:2).

19. Cynosure sales representatives Knecht and Thompson were based in Arizona. Wiesner Decl. ¶ 25, Ex. 24 (Cyno_ss_257578).

20. In deciding to purchase the SculpSure, Enhanced Image relied on the statements and information provided by the Cynosure sales representatives Knecht and Thompson during the office visits and the luncheon at PF Changs, which occurred in Arizona. Wiesner Decl. ¶¶ 11, 12 Ex. 10 (Iannitelli Depo. Tr. 50:16 – 50:21); *id*. at Ex. 11 (Enhanced Image Responses to Defendant's First Set of Interrogatories, at No. 16).

21. No personnel from Enhanced Image went to Massachusetts at any time in connection with the purchase of the SculpSure device. Wiesner Decl. ¶ 13, Ex. 12 (Janitell Depo. Tr. 58:4 – 58:8).

### C.     RENEW SKIN & LASER CENTERS, LLC (d/b/a DERMACARE)

22.    Renew Skin & Laser Centers, LLC ("Dermacare") is a medical spa located in Virginia.  Compl. ¶ 14.

23.    The owner of Dermacare is Leon Garber.  Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 34:6 – 34:8).

24.    Dermacare purchased a SculpSure device from Cynosure on December 22, 2015. Wiesner Decl. ¶¶ 14, 8, 15, Ex. 13 (Garber Depo. Tr. 237:10 – 237:13); Ex. 7 (Dermacare Purchase Agreement (Cyno_SS_00563788-90); Ex. 14 (Dermacare Responses to Defendant's First Set of Interrogatories, at No. 14).

25.    Garber signed the purchase agreement for the SculpSure device on behalf of Dermacare.  Wiesner Decl. ¶¶ 14, 8, Ex. 13 (Garber Depo. Tr. 223:8 – 223:15); Ex. 7 (Dermacare Purchase Agreement (Cyno_SS_00563788-90)).

26.    Garber's general practice was to make sure that he read contracts before he signed them. Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 222:13 – 222:15).

27.    Garber does not recall whether he read the contract for the SculpSure, but believes that, based on his normal practices, he would have read it and would have wanted to make sure he understood what it said.  Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 222:8 – 223:22).

28.    Dermacare learned of SculpSure in the early fall of 2015, when Brian Sidella, a colleague of Garber's located in South Florida, mentioned the device to him.   Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 49:18 – 50:13).

29.    In November of 2015, Garber had additional conversations and email exchanges with Sidella, located in Florida, regarding SculpSure.  Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 58:2 – 62:5).

30. In November and December of 2015, Garber had conversations in Virginia with Cynosure sales representative Dan Wilson regarding SculpSure. Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 63:3 – 63:16; 99:23 – 100:16).

31. Garber met with Cynosure sales personnel Wilson and Rob Kerwin in-person in Virginia regarding the SculpSure device. Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 62: 20 – 63:1, 63:7 – 63:16, 99:23 – 101:7).

32. Cynosure sales representatives Wilson and Kerwin were based in Maryland and Washington D.C., respectively. Wiesner Decl. ¶¶ 25, 14, Ex. 24 (Cyno_ss_257578); Wiesner Decl. Ex. 13 (Garber Depo. Tr. 101:4 – 101:7).

33. Garber was the only person from Dermacare communicating with Cynosure before the purchase of the SculpSure device. Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 105:7 – 105:10).

34. In purchasing the device, Dermacare relied on the statements the sales representatives made in Virginia, in addition to statements made by Leon Garber's colleague in Florida, Brian Sidella. Wiesner Decl. ¶¶ 14, 15, Ex. 13 (Garber Depo. Tr. 50:5 – 51:17, 72:21 – 73:21). *Id*. at Ex. 14 (Dermacare's Responses to Defendant's First Set of Interrogatories, at No. 16).

35. No personnel from Dermacare went to Massachusetts at any time in connection with the purchase of the SculpSure device. Wiesner Decl. ¶¶ 14, 16, Ex. 13 (Garber Depo. Tr. 104:16 – 105:10); Ex. 15 (Labert Depo. Tr. 35:13 – 35:21).

36. All of Garber's conversations with Cynosure personnel discussed above were with regional sales representatives who were based out of Washington D.C. Wiesner Decl. ¶ 14, Ex. 13 (Garber Depo. Tr. 104:23 – 105:6).

D. **ADVANCED HEALTH WEIGHT LOSS (d/b/a OPTIONS MEDICAL)**

37. Advanced Health Weight Loss, S.C. ("Options Medical") is a medical spa located in Illinois. Compl. ¶ 16.

38. Dr. Matthew Walker founded Options Medical, and Dr. Bitler and Dr. Mattingly are respectively majority and minority owners. Wiesner Decl. ¶ 17, Ex. 16 (Barton Depo. Tr. 38:2 – 38:8).

39. Options Medical purchased a SculpSure device on September 27, 2016. Wiesner Decl. ¶¶ 7, 18, Ex. 6 (Options Medical Purchase Agreement (Cyno_SS_00563726-27)); Ex. 17 (Options Medical Responses to Defendant's First Set of Interrogatories, at No. 14).

40. Walker signed the purchase agreement for SculpSure on behalf of Options Medical. Wiesner Decl. ¶¶ 19, 7, Ex. 18 (Mattingly Depo. Tr. 39:6 – 41:12); Ex. 6 (Options Medical Purchase Agreement (Cyno_SS_00563726-27)).

41. Walker and William Barton read the purchase agreement before Walker signed it, including the warranty limitation language on the second page. Wiesner Decl. ¶ 17, Ex. 16 (Barton Depo. Tr. 172:1 – 171:21; 176:7 – 176:9).

42. Mattingly also read through the contract before it was signed, including the warranty limitation language on the second page. Wiesner Decl. ¶ 19, Ex. 18 (Mattingly Depo. Tr. 37:5 – 37:21, 39:5 – 41:24).

43. Prior to purchasing SculpSure, Barton contacted a SculpSure owner in Sarasota, Florida, whom he found on Google, and who provided him with information regarding the SculpSure device. Wiesner Decl. ¶ 17, Ex. 16 (Barton Depo. Tr. 113:14 – 114:6).

44. Prior to purchasing the SculpSure device, Cynosure sales representative Hohenstein met with Options Medical personnel in-person on two separate occasions, both in

Illinois.  Wiesner Decl. ¶¶ 17, 19, Ex. 16 (Barton Depo. Tr. 133:7 – 134:18, 164:14 –165:20); Ex. 18 (Mattingly Depo. Tr. 31:5 – 32:8).

45. Prior to Options Medical's purchase of the SculpSure device, Hohenstein also sent emails to Barton, who was located in Illinois, with additional information regarding the SculpSure device.  Wiesner Decl. ¶ 17, Ex. 16 (Barton Depo. Tr. 157:1 – 159:18).

46. In purchasing the SculpSure device, Options Medical relied on statements made and emails sent to him in Illinois by Brad Hohenstein.  Wiesner Decl. ¶¶ 17, 18, Ex. 16 (Barton Depo. Tr. 161:6 – 162:6); Ex. 17 (Options Medical's Responses to Defendant's First Set of Interrogatories, No. 16).

47. Cynosure sales representatives Hohenstein was based in Chicago.  Wiesner Decl. ¶ 25, Ex. 24 (Cyno_ss_257578).

48. No personnel from Options Medical went to Massachusetts at any time in connection with the purchase of the SculpSure device.  Wiesner Decl. ¶¶ 17, 19, Ex. 16 (Barton Depo. Tr. 134:19 – 134:24); Ex. 18 (Mattingly Depo Tr. 31:22-32:8).

E. **GREEN CHRYSALIS ENTERPRISE, LLC (d/b/a FACE PLACE)**

49. Green Chrysalis Enterprise, LLC ("Face Place") is located in Texas.  Compl. ¶ 13.

50. Donna Green is the founder and owner of Face Place.  Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 18:21 – 19:5).

51. Face Place purchased a SculpSure device from Cynosure on February 29, 2016. Wiesner Decl. ¶¶ 10, 20, 21, Ex. 9 (Face Place Purchase Agreement (Cyno_SS_00563879-80)); Ex. 19 (Green Depo. Tr. 44:2 – 44:25; 78:14 – 78:23). Ex. 20 (Face Place's Responses to Defendant's First Set of Interrogatories, at No. 14)

52. Green signed the purchase agreement for SculpSure on behalf of the Face Place. Wiesner Decl. ¶¶ 20, 10, Ex. 19 (Green Depo. Tr. 77:15 – 77:17); Ex. 9 (Face Place Purchase Agreement (Cyno_SS_00563879-80)).

53. Green does not recall whether she read the terms and conditions of the contract before she signed it. Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 80:3 – 80:11).

54. Green only recalls seeing the first page of the purchase agreement, and does not recall seeing additional pages. Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 80:3 – 83:4).

55. However, the page of the contract she signed states that the customer accepts all of the terms of the conditions as stated in this document "including the following page(s)." Wiesner Decl. ¶ 10, Ex. 9 (Face Place Purchase Agreement (Cyno_SS_00563879-80)).

56. The Face Place became interested in SculpSure when Cynosure sales representative Lance Baird visited the Face Place office in Texas, in December 2015. Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 37:8- – 37:16).

57. Subsequently, Lance Baird called Green in February, 2016, and sent her one email, and then came to the office in Texas once more, also in February, 2016. Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 42:17 – 47:1).

58. During the second meeting with Lance Baird, at Face Place's office in Texas, Green signed the contract to purchase the device. Wiesner Decl. ¶ 20, Ex. 19 (Green Depo. Tr. 44:23 – 44:25).

59. Cynosure sales representatives Baird was based in Arizona. Wiesner Decl. ¶ 25, Ex. 24 (Cyno_ss_257578).

60. In purchasing the SculpSure device, the Face Place relied on statements made and the email sent by Lance Baird to Green in Texas. Wiesner Decl. ¶ 21, Ex. 20 (Face Place's Responses to Defendant's First Set of Interrogatories, No. 16).

61. Other than the two meetings with Lance Baird, one phone call from Lance Baird, and one email from Lance Baird, Face Place did nothing else to learn about SculpSure device before purchasing it. Wiesner Decl. ¶ 20, Ex. 19 (Donna Green Tr. 49:17 – 50:5).

62. No personnel from Face Place went to Massachusetts at any time in connection with the purchase of the SculpSure device. Wiesner Decl. ¶¶ 20, 22, Ex. 19 (Green Depo. Tr. 49:11-50:5); Ex. 21 (Henegan Depo. Tr. 35:12 – 36:22).

**F.   PLASTIC SURGERY ASSOCIATES**

63. Plastic Surgery Associates, S.C. provides cosmetic treatments, plastic surgery, and skin care to patients out of its Wisconsin office. Compl. ¶ 11.

64. Dr. George Korkos was the founder of PSA, and as of 2010, Dr. Tom Korkos and Dr. Christopher Hussussian are the owners. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. 16:12 – 17:2).

65. PSA purchased a SculpSure device from Cynosure on November 23, 2015. Wiesner Decl.¶¶ 9, 23 Ex. 8 (PSA Purchase Agreement (Cyno_SS_00563845-46)); Ex. 22 (Hussussian Depo. Tr. 129:21 – 130:9).

66. Christopher Hussussian signed the purchase agreement for SculpSure on behalf of PSA. Wiesner Decl.¶¶ 9, 23 Ex. 8 (PSA Purchase Agreement (Cyno_SS_00563845-46)); Ex. 22 (Hussussian Depo. Tr. 129:19 – 130:19).

67. Prior to signing the purchase agreement, Hussussian and Korkos both read the purchase agreement, including the warranty limitation section on the second page. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. 130:20 – 136:5).

68. In October 2015, Hussussian attended a meeting of the American Society of Plastic Surgeons ("ASPS") in Boston, Massachusetts, where he learned about the SculpSure device, and was told it would provide results "equivalent to CoolSculpting" and a "comfortable patient." Compl. ¶ 57; Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 43:5 – 48:25).

69. Hussussian was the only member of PSA at the October, 2015 ASPS meeting. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 43:24 – 44:1).

70. At the ASPS meeting, Dr. Hussussian spoke to Cynosure representatives at their booth, and observed a demonstration, but did not attend any presentations related to SculpSure. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. 43:20 – 46:13).

71. After the October 2015 ASPS meeting, Hussussian returned to Wisconsin where he discussed purchasing the SculpSure device with Korkos, at which point they "decided to investigate possibly bringing [the device] into [their] practice." Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 49:17 – 49:24).

72. In November, 2015, Hussussian, Korkos and other PSA personnel met with Cynosure sales representative Jen Grider at the PSA office in Wisconsin to discuss the SculpSure device. *See, e.g.*, Compl. ¶ 58; Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 50:16 – 51:9, 129:8 – 129:18).

73. At the November, 2015, meeting, Hussussian asked Grider to provide literature in support of the SculpSure device, and Grider displayed before-and-after photos on an iPad, and discussed studies that had been done. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 52:8 – 20).

74. After this in-person meeting in Wisconsin, Grider had three or four phone conversations, multiple text messages, and approximately ten email communications with

Hussussian, who was located in Wisconsin, regarding the SculpSure. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 51:18 – 52:7).

75. Cynosure sales representative Grider was based in Illinois. Wiesner Decl. ¶ 25, Ex. 24 (Cyno_ss_257578).

76. Prior to purchasing the device, Hussussian also communicated with a doctor in New Jersey or New York who owned SculpSure, because it was "important . . . to speak to at least one person who had significant clinical experience with the machine," and learning from the doctor that "he had been using [the device] for enough time to be able to evaluate the results in his practice, and he was very confident that the product worked as advertised and that . . . he was fully able to offer it without any second thoughts to his patients." Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. at 62:12 – 70:1).

77. In purchasing the SculpSure device, PSA relied on statements made by Jen Grider in Wisconsin. Wiesner Decl. ¶¶ 24, 23, Ex. 23 (Egan Depo. Tr. at 33:6 – 33:18) ; Ex. 22 (Hussussian Depo. Tr. at 129:2 – 129:18).

78. Hussussian was "primarily responsible" for the research into the SculpSure device. Korkos did not directly investigate the SculpSure, but instead relied on Hussussian and on the "direct discussions with Jen Grider," which took place in Wisconsin. Wiesner Decl. ¶ 23, Ex. 22 (Hussussian Depo. Tr. 129:8 – 129:18).

79. Four out of the five Plaintiffs testified that their local reputations were harmed after and by the purchase of the SculpSure device. Wiesner Decl. ¶¶ 23, 11, 17, 20, Ex. 22 (PSA - Hussusian Depo. Tr. at 139:3-139:21), Ex. 10 (Enhanced Image - Ianittelli Depo Tr. at 185:17 - 186:18), Ex. 16 (Options Medical - Barton Depo. Tr. at 291:9 - 293:12), Ex. 19 (The Face Place - Green, at 242:24 - 244:25).

Respectfully submitted,

                **CLEMENTS & PINEAULT LLP**
By: */s/ Michael J. Pineault*
Michael J. Pineault
24 Federal Street, 3rd Floor
Boston, MA 02110
T: +1 857.445.0135
F: +1 857.366.5404
mpineault@clementspineault.com

**ARNOLD & PORTER KAYE SCHOLER LLP**
Anand Agneshwar (*pro hac vice*)
Lori B. Leskin (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9170
T: +1 212.836.8000
F: +1 212.836.8639
Anand.Agneshwar@arnoldporter.com
Lori.Leskin@arnoldporter.com

Daniel S. Pariser (*pro hac vice*)
Jocelyn Wiesner (*pro hac vice*)
601 Massachusetts Ave., NW
Washington, DC 20001-3743
T: +1 202.942.5000
F: +1 202.942.5999
Daniel.Pariser@arnoldporter.com
Jocelyn.Wiesner@arnoldporter.com

George Langendorf (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4024
T: +1 415.471.3191
F: +1 415.471.3400
George.Langendorf@arnoldporter.com

*Attorneys for Defendant Cynosure, LLC*

STATEMENT OF UNDISPUTED FACTS

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 19th day of February, 2019, the foregoing Statement of Undisputed Facts in Support of Defendant Cynosure, LLC's Motion for Summary Judgment was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                             */s/ Michael J. Pineault*
                                             Michael J. Pineault