IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLASTIC SURGERY ASSOCIATES, S.C., a Wisconsin corporation, INFINITY SPA ORLANDO, LLC, a Florida corporation, GREEN CHRYSALIS ENTERPRISE, LLC d/b/a THE FACE PLACE, a Texas corporation, RENEW SKIN & LASER CENTERS, LLC d/b/a DERMACARE OF HAMPTON ROADS, a Virginia corporation, ARIZONA ADVANCED AESTHETICS, PLLC d/b/a ENHANCED IMAGE MED SPA, an Arizona corporation, ADVANCED HEALTH WEIGHT LOSS, S.C. d/b/a OPTIONS MEDICAL WEIGHT LOSS, an Illinois corporation, *on behalf of themselves and all others similarly situated*, | Case No. 17-cv-11850 (cons.)<br><br>Hon. Denise J. Casper |
|     Plaintiffs, | |
| v. | |
| CYNOSURE, INC., a Delaware corporation, | |
|     Defendant. | |
| VITA 4 LIFE, INC., | Case No. 17-cv-11435 (cons.) |
|     Plaintiff, | Hon. Denise J. Casper |
| v. | |
| CYNOSURE, INC., | |
|     Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

[REDACTED VERSION]

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     SUMMARY OF FACTS COMMON TO THE CLASS ...................................... 3

    A.      Cynosure designs and manufactures SculpSure to compete with other non-invasive body contouring devices. ....................................... 3

    B.      From the outset, Cynosure sought to position SculpSure to providers as a painless, one-time 25-minute treatment, during which the operator could leave the patient unattended in the room. .................... 6

    C.      Marketing and sales representatives begin to push SculpSure as a "one-time," "painless," and "hands-free" treatment. .............................. 7

    D.      Cynosure's internal documents demonstrate that it had no reason to believe that SculpSure would be a one-treatment, painless, hands-free procedure. ................................................................................. 10

    E.      Internal conversations reveal scores of customers deceived by ███████ and ████████████ ........................................................... 12

    F.      Dr. Nathaniel M. Fried opines that SculpSure is incapable of reproducible clinical outcomes and unable to provide both a painless and effective treatment for the patient. ................................. 14

    G.      Dr. Anna A. Bar opines that CynoSure's representations are targeted at the criteria relevant to a practice's purchase of a body-contouring device. ....................................................................... 14

    H.      Plaintiffs have been deceived by Cynosure's sales messaging regarding efficacy, pain, and the ability of the operator to leave the room. ....................................................................................... 15

III.    ARGUMENT ....................................................................................................... 17

    A.      Rule 23(c)(4) provides for the certification of a class with respect to certain issues that, once resolved, would "materially advance" the litigation. ................................................................................. 17

    B.      Plaintiffs seek to certify four issues related to their Chapter 93A misrepresentation claim. ..................................................................... 19

    C.      Plaintiffs meet the prerequisites of Rule 23(a). ................................. 20

010674-11 1090797 V2

1.      Plaintiffs satisfy numerosity where Cynosure sold ███
        ███ SculpSure units to the Class. ........................................................20

2.      Common questions regarding Cynosure's deceptive tactics
        establish commonality. ............................................................................21

3.      Plaintiffs' claims are typical of the Class where they pursue
        the same consumer fraud claims for the same alleged
        deceptive acts regarding the same product. ............................................22

4.      Plaintiffs have proven that they will adequately protect the
        Class through their demonstrated commitment and effort in
        litigating this matter to date. ..................................................................22

D.      Common issues predominate with respect to the four issues that
        Plaintiffs seek to certify under Rule 23(c)(4). .....................................23

1.      Whether Cynosure engaged in "trade or business" when it
        designed, marketed, and sold SculpSure to consumers will
        be true for all class members. .................................................................23

2.      Chapter 93A, Section 11, employs an objective standard to
        determine whether an act was deceptive, rendering the
        remaining issues ideal for class-wide resolution. ...................................24

E.      Certification of these issues would materially advance the litigation
        and remains the superior method to litigate the claims of Plaintiffs
        and the Class. ...........................................................................................28

IV.     CONCLUSION ..................................................................................................29

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Amador v. Baca*,
   No. 10-cv-1649-SVW, 2014 WL 10044904 (C.D. Cal. Dec. 18, 2014)................................19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...........................................................................................................25

*Aspinall v. Philip Morris Cos., Inc.*,
   442 Mass. 381 (2004) ..................................................................................................24, 25

*In re Boston Scientific Corp. Sec. Litig.*,
   604 F. Supp. 2d 275 (D. Mass. 2009) ................................................................................22

*Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*,
   384 F. Supp. 2d 442 (D. Mass. 2005) .......................................................................1, 20, 24

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ..............................................................................................19

*In re Copley Pharm., Inc.*,
   161 F.R.D. 456 (D. Wyo. 1995) .........................................................................................18

*Donovan v. Philip Morris USA, Inc.*,
   268 F.R.D. 1 (D. Mass. 2010)..............................................................................................21

*Garcia v. E.J. Amusements of N.H., Inc.*,
   98 F. Supp. 3d 277 (D. Mass. 2015) ...................................................................................21

*George v. Nat'l Water Main Cleaning Co.*,
   286 F.R.D. 168 (D. Mass. 2012)..........................................................................................28

*McQuilken v. A & R Dev. Corp.*,
   576 F. Supp. 1023 (E.D. Pa. 1983) .....................................................................................29

*In re Motor Fuel Temperature Sales Practices Litig.*,
   279 F.R.D. 598 (D. Kan. 2012)...........................................................................................18

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006)..................................................................................18, 19, 23

*Payton v. Abbott Labs*,
   83 F.R.D. 382 (D. Mass. 1979), *vacated on other grounds*, 100 F.R.D. 336 (D.
   Mass. 1983)....................................................................................................................21, 28

*In re Prograf Antitrust Litig.*,
    No. 1:11-md-02242-RWZ, 2014 WL 4745954 (D. Mass. June 10, 2014)............19, 23, 28, 29

*Reid v. Donelan*,
    297 F.R.D. 185 (D. Mass. 2014), *enforcement granted*, 64 F. Supp. 3d 271 (D.
    Mass. 2014)......................................................................................................................21

*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)............................................................................................18

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ...................................29

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) .........................................................................................19

*Tardiff v. Knox Cty.*,
    365 F.3d 1 (1st Cir. 2004) ................................................................................................18

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...........................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)....................................................................................................20, 21

### STATUTES

MASS. GEN. LAWS ANN. ch. 93A ...............................................................................................24

### OTHER AUTHORITIES

Comm. Notes to Fed. R. Civ. P. 23(c)(4) ...................................................................................18

Draft Comm. Note to Proposed Amendments to Fed. R. Civ. P. 23(c) (Feb. 1995) .....................18

Fed. R. Civ. P. 23 ...............................................................................................18, 20, 21, 22

Joseph A. Seiner, *The Issue Class*, 56 B.C. L. REV. 121, 123 (2015)............................................18

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.24 (2004)......................................................18

Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.1 ...................................2, 25

Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.2 ...........................2, 24, 25

010674-11 1090797 V2

## I.     INTRODUCTION



Plaintiffs are five of ███████ medical practices which purchased SculpSure from Cynosure. Each acquired the nearly $200,000 medical device based on Cynosure's representations as to the device's key attributes. Yet, as soon as they began treating their patients, each purchaser discovered those claims to be false.

Because the deception was a uniform marketing scheme, Plaintiffs now move for certification of a Rule 23(c)(4) issue class under Chapter 93A of the Massachusetts General Laws. The claim has but three elements: (1) "a person who is engaged in trade or business"; (2) "committed an unfair or deceptive trade practice"; and (3) "the claimant suffered a loss of money or property as a result."[4] The first two elements are ideal for class-wide resolution

---

[1] Plaintiffs' Proffer of Common Evidence in Support of Their Motion for Class Certification and Appointment of Class Counsel ("Fact Proffer"), filed herewith, ¶¶ 72, 82.

[2] *Id.* ¶¶ 38-40, 75.

[3] *Id.* ¶¶ 74-75, 86, 97, 101.

[4] *Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F. Supp. 2d 442, 446 (D. Mass. 2005).

- 1 -

because they both require evidence of only Cynosure's conduct. So, in proving these elements of the claim, a trial will look exactly the same no matter the plaintiff.

Specifically, Plaintiffs' proposed issue class seeks to resolve the first two elements by resolving four discreet issues:

(1) Was Cynosure engaged in "trade or business" when it sold SculpSure to Plaintiffs and the Class?

(2) Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as a one-time treatment?

(3) Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as "painless" or "pain-free" or "comfortable"?

(4) Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as a "hands-free" treatment that permitted the operator to leave the room during the procedure?

Each of these issues can be resolved on a class-wide basis with common evidence, satisfying both the initial requirements of Rule 23(a) and the predominance requirement of Rule 23(b).

To illustrate, for the first issue, Plaintiffs need only show first that Cynosure engaged in "trade or business" by selling SculpSure to the Plaintiffs and the Class. Further, the standard to be applied to issues two through four is objective; that is, the Act defines a "deceptive" practice as one that "could reasonably cause a person to act differently from the way [he/she] would act if [he/she] knew the truth about the matter."[5] Objective inquiries of this nature render irrelevant the subjective mind of the plaintiff. Thus, any evidence will focus solely on "the nature of the conduct that the complaint is about,"[6] which is inherently common to the Class.

This case therefore presents the precise circumstances that warrant issue certification. The efficiencies to be gained are evident. There is no need to re-litigate these common issues

---

[5] Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.2.

[6] Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.1(b).

when they can be tried in a single proceeding, the resolution of which will either effectively end

the matter or bring the Class significantly closer to recovery. In either instance, the Court

benefits from not having to panel several different juries to examine the same evidence, same

witnesses, and same experts. To achieve such efficiencies is the very purpose for which issue

certification exists—and ultimately why it is appropriate here. Accordingly, the Court should

grant Plaintiffs' Motion for Class Certification and the Appointment of Class Counsel.

## II.   SUMMARY OF FACTS COMMON TO THE CLASS[7]

**A.   Cynosure designs and manufactures SculpSure to compete with other non-invasive body contouring devices.**

██████████████████ Cynosure, Inc. began development of a non-invasive body-

contouring device to be sold to and used by plastic surgeons, physicians, and med spas under the

name SculpSure.[8] Non-invasive body contouring is a type of cosmetic procedure intended to

reduce the amount of fat in a specific area on the body.[9] ███████████████████

████████████████████████████████████████████████████████████████

█████████.[10]

        █████████████████████████████████████████████████████.[11]

██████████████████████████ ████████████████████████████

████████████████████████████████████████████

---

[7] For a more complete version of the facts and evidence in this case, Plaintiffs submit contemporaneously with this filing, Plaintiffs' Proffer of Common Evidence in Support of Their Motion for Class Certification and Appointment of Class Counsel ("Fact Proffer").

[8] *Id.* ¶ 4, 9.

[9] *Id.* ¶ 1.

[10] *Id.*

[11] *Id.* ¶ 2.

[12] *Id.*



A SculpSure treatment takes approximately 25 minutes.[21] Each machine has four movable arms with a flat applicator at the end to deliver the laser to the desired area of the body.[22] The clinician begins by attaching the applicators to the patient before initiating the treatment.[23] It starts with the four-minute "build phase," during which the laser begins heating

---

[13] *Id.*

[14] *Id.*

[15] *Id.* ¶ 3.

[16] *Id.* ¶ 10.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* ¶¶ 17-18.

[22] *Id.* ¶ 13.

[23] *Id.* ¶¶ 14-16.

010674-11 1090797 V2

the fat tissue.[24] As the name suggests, the goal of the "build phase" is to "build" up the

temperature in the tissue to the optimal range of 42-47°C.[25] Once completed, the "sustain phase"

follows, where the idea is to maintain that target temperature range.[26] This phase lasts

approximately 21 minutes.[27]

SculpSure has several energy levels (measured in W/cm$^2$).[28] The levels range from 0.9 to

1.4 W/cm$^2$. Using a higher level results in a "higher temperature rise as compared to [the] lower

power."[29] And it is incumbent on the operator to adjust these levels during both treatment phases

to accurately keep the temperature within the target temperature range.[30] SculpSure, however,

does not measure the temperature of the tissue during the treatment, so the operator must rely on

patient feedback to gauge the appropriate amount of energy.[31] Cynosure instructs the operator to

use the Zone Score Chart that describes five sensations, each correlating with a number.[32] The

aim is to keep the patient in Zone Four, which Cynosure now describes as "Prickling, pinching,

pressure, longer peaks of moderate deep heat and cooling."[33]

Additionally, Cynosure utilizes a consumable model, meaning that providers must use up

paid credits (called PACs) to run the machine.[34] Practitioners purchase a preloaded PAC Key,

---

[24] *Id.* ¶ 17.

[25] *Id.*

[26] *Id.* ¶ 18.

[27] *Id.*

[28] *Id.*, Vazquez Decl., Ex. 10.

[29] *Id.*

[30] *Id.* ¶¶ 50-51, 96.

[31] *Id.*

[32] *Id.* ¶¶ 50-51, 96.

[33] *Id.* ¶ 96.

[34] *Id.* ¶ 19.

which, before using the machine, they must plug into the SculpSure unit.[35] Each applicator arm

uses one PAC, so a treatment using all four applicators will cost four PACs.[36] ████████

████████████████████████.[37]

**B.     From the outset, Cynosure sought to position SculpSure to providers as a painless, one-time 25-minute treatment, during which the operator could leave the patient unattended in the room.**

████████████████████████████████

████████████████████████████████████

████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* ¶¶ 21-33.

[39] *Id.*

[40] *Id.* ¶ 28.

[41] *Id.* ¶ 31.

[42] *Id.* ¶ 24.



**C.    Marketing and sales representatives begin to push SculpSure as a "one-time," "painless," and "hands-free" treatment.**

The Food and Drug Administration cleared SculpSure for use on the flanks and abdomen

in mid-2015, prompting Cynosure to ramp up promotional efforts.[50] Cynosure featured

SculpSure at dermatology and plastic surgery association meetings, as well as at various events it

hosted throughout the country.[51] ████████████████████████████████████████████

---

[43] *Id.* ¶ 28.

[44] *Id.* ¶ 24.

[45] *Id.* ¶ 32.

[46] *Id.* ¶¶  22, 24, 33.

[47] *Id.* ¶ 33.

[48] *Id.*

[49] *Id.*, Ex 2 (at 61252).

[50] *Id.* ¶ 54.

[51] *Id.* ¶¶ 55-57.



Further, Cynosure created marketing videos that it posted online, played at events and shared with potential buyers. One such video emphasized the promise of a one-treatment procedure for SculpSure, claiming "the average person is probably only going to need one treatment" and that "results with SculpSure allow typically a notch on the belt with a single treatment."[57]

---

[52] *Id.* ¶ 58.

[53] *Id.* ¶¶ 62-70.

[54] *Id.* ¶¶ 66-67.

[55] *Id.* ¶ 65.

[56] *Id.*

[57] *Id.* ¶ 60.

010674-11 1090797 V2



---

58 *Id.* ¶ 61.

59 *Id.*

60 *Id.*

61 *Id.* ¶ 72.

62 *Id.*

63 *Id.*

64 *Id.*

65 *Id.* ¶¶ 72-75.

66 *Id.* ¶ 73.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

▌ ███████████████████████████

▌ █████████████████████

▌ ████████

▌ ████████████████████████

▌ ██████████████████████████████

███████

█████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

**D.   Cynosure's internal documents demonstrate that it had no reason to believe that SculpSure would be a one-treatment, painless, hands-free procedure.**

███████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

---

[67] *Id.* ¶ 74.

[68] *Id.* ¶ 75.

[69] *Id.* ¶ 20.

[70] *Id.*

[71] *Id.* ¶ 78.

[72] *Id.* ¶¶ 81-83

[73] *Id.*

[74] *Id.* ¶ 36.

[75] *Id.*

[76] *Id.* ¶¶ 38-40.

[77] *Id.* ¶ 41.

████████████████ ████████████████████████████████

███████████████████████████████████████ [9]

**E.** **Internal conversations reveal scores of customers deceived by** ██████████ **and**
██████████

████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████ ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███ ██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████████

█████████████ ████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ ███████████████████████

---

[78] *Id.* ¶ 101.

[79] *Id.* ¶ 86.

[80] *Id.* ¶ 79.

[81] *Id.* § II.D.

[82] *Id.* ¶ 90.

[83] *Id.* ¶ 94.

[84] *Id.* ¶ 92.



---

85 *Id.* ¶ 85.

86 *Id.* ¶ 79.

87 *Id.* ¶ 80.

88 *Id.* ¶ 86.

89 *Id.* ¶ 101.

010674-11 1090797 V2



**F.     Dr. Nathaniel M. Fried opines that SculpSure is incapable of reproducible clinical outcomes and unable to provide both a painless and effective treatment for the patient.**

Nathaniel M. Fried, Ph.D., is a Professor in the Department of Physics and Optical Science at the University of North Carolina at Charlotte, and an expert in laser-tissue interactions.[92] Dr. Fried explains that the SculpSure laser lacks certain characteristics associated with successful laser applications, and does not include any method for accurately monitoring the temperature of the fat tissue during the treatment.[93] He opines that SculpSure is unlikely to produce any meaningful results from a single treatment, incapable of reproducible clinical outcomes, and incapable of being both effective and painless.[94]

**G.     Dr. Anna A. Bar opines that CynoSure's representations are targeted at the criteria relevant to a practice's purchase of a body-contouring device.**

Anna A. Bar, M.D., is an Assistant Professor of Dermatology at Oregon Health & Science University, School of Medicine, the Fellowship Program Director for the Mohs

---

[90] *Id.* ¶ 97.

[91] *Id.*

[92] Vazquez Decl., Ex. 111, Expert Report of Nathaniel M. Fried, Ph.D. in Support of Plaintiffs' Motion for Class Certification ("Fried Report"), ¶¶ 1-6.

[93] *Id.* ¶¶ 25-37.

[94] *Id.* ¶ 14.

Micrographic Surgery and Dermatologic Oncology, and Cosmetic Dermatology Fellowship, and operates a cosmetic dermatology practice.[95] According to Dr. Bar, Cynosure's statements regarding the number of treatments required would be material to a reasonable purchaser because "[a] procedure that requires multiple expensive treatments is harder to sell and market to patients."[96] Similarly, she concludes the tolerability of a procedure is material to a reasonable purchaser because selling a painless procedure to patients is easier than selling a painful one, and negative patient experiences can lead to poor reviews and decreased referrals.[97] Finally, she opines that Cynosure's representations regarding the ability to leave the room during the treatment are material because this attribute allows the practice flexibility in staffing.[98]

## H.     Plaintiffs have been deceived by Cynosure's sales messaging regarding efficacy, pain, and the ability of the operator to leave the room.

Plastic Surgery Associates, located in Waukesha, Wisconsin, provides plastic surgery and cosmetic medical treatments. It purchased a SculpSure for $165,000 in December 2015.[99] Cynosure advertised SculpSure to Plastic Surgery Associates as a "one and done treatment," or "one treatment to completion." Cynosure also described SculpSure as a "comfortable procedure," which "was important" to Plastic Surgery Associates because it wanted its patients "to walk out of our offices with a positive attitude for what they underwent, and if they felt something was uncomfortable or painful, then they don't necessarily have that." Further, Plastic Surgery Associates was told "that the patients can be alone. It's a hands-free procedure[.]"[100] The

---

[95] Vazquez Decl., Ex. 110, Expert Report of Anna Bar, M.D., in Support of Plaintiffs' Motion for Class Certification ("Bar Report"), ¶¶ 1-5.

[96] *Id.* ¶ 23.

[97] *Id.* ¶ 28.

[98] *Id.* ¶¶ 32-35.

[99] Fact Proffer, ¶ 104.

[100] *Id.* ¶ 105.

practice found that to be "a selling point in the sense that you could free someone up to do another treatment somewhere else."[101] Plastic Surgery Associates would not have purchased SculpSure if it been truthfully represented.[102]

The Face Place is a med spa located in Hurst, Texas. It purchased a SculpSure in 2016 for $165,750. Cynosure described SculpSure to The Face Place as "one treatment, 'one and done,'" "painless," and "hands-free" during sales pitches.[103] The Face Place "expected that what [it] had been told was the truth, that [SculpSure] was a one-and-done treatment, that it was painless[,] … that it would be hands-free, [and] that the clients would get a great result with less discomfort." Had the company known the truth regarding all of these representations, it would not have purchased the device.[104]

Dermacare is a med spa located in Chesapeake, Virginia. It purchased a SculpSure in December 2015 for $165,750. Cynosure sold SculpSure to Dermacare as a "one-and-done" treatment protocol, and did not inform Dermacare about "Treat to Complete" until it had owned the system "for nearly six months."[105] Cynosure also described the procedure as hands-free in that the "provider could leave the room" after the "first five minutes," and as causing no pain.[106] Dermacare explained that these promises "did not come true."[107] Dermacare now must pay thousands monthly on a device it does not use and would have never purchased had it known the truth.[108]

---

[101] *Id.*

[102] *Id.* ¶ 106.

[103] *Id.* ¶ 107.

[104] *Id.* ¶ 108.

[105] *Id.*

[106] *Id.* ¶ 109.

[107] *Id.* ¶ 111.

[108] *Id.* ¶ 112.

010674-11 1090797 V2

Advanced Image Med Spa (formerly "Enhanced Image Med Spa") provides liposuction and cosmetic treatments to its patients in Glendale, Arizona.[109] It purchased a SculpSure for $163,750 in January 2016.[110] Cynosure sold SculpSure to Advanced Image "as a liposuction equivalency, one and done," "painless," and "hands free" meaning there "would be a very short period of time that [the doctor] would actually be present in the room."[111] Advanced Image found these representations to be false, and as a result has been harmed in a myriad of ways, including loss of reputation, lost patients, and enormous financial strain.[112]

Options Medical is a weight-loss clinic located in Chicago, Illinois.[113] It purchased SculpSure for $165,000 in September 2016.[114] Cynosure described SculpSure as "a one treatment procedure," "not painful," and hands-free in that "a staff member would not need to be present during the entirety of a SculpSure treatment."[115] If Options Medical had known that SculpSure was painful, required more than one treatment, or required a staff member to be present during the entirety of the treatment," it would not have purchased SculpSure.[116]

## III.   ARGUMENT

### A.   Rule 23(c)(4) provides for the certification of a class with respect to certain issues that, once resolved, would "materially advance" the litigation.

Plaintiffs move to certify what courts frequently refer to as an "issue class" or "issue certification." The procedural device comes from Federal Rule of Civil Procedure 23(c)(4), which provides that, "[w]hen appropriate, an action may be brought or maintained as a class

---

[109] *Id.* ¶ 113.

[110] *Id.* ¶ 114.

[111] *Id.*

[112] *Id.* ¶ 115.

[113] *Id.* ¶ 116.

[114] *Id.*

[115] *Id.* ¶ 117.

[116] *Id.* ¶ 118.

action with respect to particular issues."[117] The provision permits a district court to certify a class

action as to particular elements or issues of the Class's claim "regardless of whether the claim as

a whole satisfies Rule 23(b)(3)'s predominance requirement."[118]

A frequent example is the "liability only" class; "[i]f the class action resolved liability

even as to some further narrowed class, … the court could enter a judgment of liability, leaving

class members to pursue damage claims in separate law suits."[119] In the context of mass torts,

district courts often use Rule 23(c)(4) to resolve threshold issues of causation.[120] In consumer

cases, such as this, courts can resolve class-wide issues such as "whether defendants engaged in

a deceptive or unconscionable act or practice" under the applicable act.[121]

The ultimate goal is judicial economy; even when common issues do not predominate as

to every element of class members' claims, the Court may still certify a class as to certain issues

should they "materially advance[]" the litigation.[122] In other words, if it would be more efficient

---

[117] Fed. R. Civ. P. 23(c)(4).

[118] *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006).

[119] *Tardiff v. Knox Cty.*, 365 F.3d 1, 6–7 (1st Cir. 2004); *see also* Comm. Note to Fed. R. Civ. P. 23(c)(4) ("in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class").

[120] *See, e.g.*, *In re Copley Pharm., Inc.*, 161 F.R.D. 456, 458 (D. Wyo. 1995) (certifying the issue of whether "*pseudomonas fluorescens* or other possible contaminants dangerous to the human body"); *see also, e.g.*, Draft Comm. Note to Proposed Amendments to Fed. R. Civ. P. 23(c) (Feb. 1995) ("[I]n some mass tort situations, it might be appropriate to certify some issues relating to the defendants' culpability and … general causation for class action treatment, while leaving issues relating to specific causation, damages, and contributory negligence for potential resolution through individual lawsuits brought by members of the class.").

[121] *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 616 (D. Kan. 2012).

[122] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.24 (2004); *see also Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) ("District courts should take full advantage of [Rule 23(c)(4)] to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.") (internal citation and quotation marks omitted); Joseph A. Seiner, *The Issue Class*, 56 B.C. L. REV. 121, 123 (2015) ("Rule 23(c)(4) allows the judge to separate specific common questions in the case and resolve other

---

to resolve "the principal issue[s]—common to all class members … in a single proceeding" as opposed to "separately in hundreds of different trials," certification of those issues is warranted.[123]

Even certification of a single issue can save the parties considerable expense, obviating the need to present the same evidence or expert testimony several times over. It also precludes "separate actions from reaching inconsistent results with similar, if not identical, facts."[124] And issue certification prevents defendants from "escap[ing] liability for tortious harms of enormous aggregate magnitude [by being so] widely distributed as not to be remediable in individual suits."[125]

**B.**   **Plaintiffs seek to certify four issues related to their Chapter 93A misrepresentation claim.**

With these goals in mind, Plaintiffs move to certify an issue class as a means of efficiently litigating the threshold issue in every claim brought by purchasers that Cynosure deceived when marketing SculpSure. As documented by the company itself, its deception was widespread.

---

issues individually. The judge can thereby tailor the certified issues to the facts of the specific case, thus leading to more efficient litigation. In this way, issue class certification also results in more streamlined proceedings. Courts can resolve claims that touch on a common issue a single time, while allowing the remaining issues in the case to be litigated separately.") (citations omitted).

[123] *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013).

[124] *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *see also In re Nassau Cty. Strip Search Cases*, 461 F.3d at 228 ("Such a result also undermines the goal of uniformity by creating the risk of inconsistent decisions through the repeated litigation of the same question[.]"); *In re Prograf Antitrust Litig.*, No. 1:11-md-02242-RWZ, 2014 WL 4745954, at *2 (D. Mass. June 10, 2014) ("Even if such separate legal actions are pursued, they are likely to require duplicative discovery and redundant litigation, and may result in inconsistent adjudications regarding [defendant's] conduct."); *Amador v. Baca*, No. 10-cv-1649-SVW, 2014 WL 10044904, at *8 (C.D. Cal. Dec. 18, 2014) ("The risk of inconsistent verdicts is real . …").

[125] *Butler*, 727 F.3d at 801.

Specifically, Plaintiffs move to certify four issues related to their misrepresentation claim under Chapter 93A of the Massachusetts General Laws. Plaintiffs' misrepresentation claim under Chapter 93A requires proof (1) "that a person who is engaged in trade or business" (2) "committed an unfair or deceptive trade practice" and (3) that "the claimant suffered a loss of money or property as a result."[126] Plaintiffs' proposed issue class seeks to resolve the first two elements by resolving four discreet issues:

(1)    Was Cynosure engaged in "trade or business" when it sold SculpSure to Plaintiffs and the Class?

(2)    Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as a one-time treatment?

(3)    Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as "painless" or "pain-free" or "comfortable"?

(4)    Did Cynosure engage in a deceptive act or practice under Chapter 93A, §§ 2, 11, of the Massachusetts General Laws, by representing SculpSure as a "hands-free" treatment that permitted the operator to leave the room during the procedure?

Each of these issues can be resolved on a class-wide basis with common evidence, satisfying both the initial requirements of Rule 23(a) and the predominance requirement of Rule 23(b).

## C.    Plaintiffs meet the prerequisites of Rule 23(a).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."[127] Under Rule 23(a), Plaintiffs must meet four prerequisites, commonly referred to as: numerosity, commonality, typicality, and adequacy.[128]

### 1.    Plaintiffs satisfy numerosity where Cynosure sold ████████ SculpSure units to the Class.

---

[126] *Brandon Assocs., LLC*, 384 F. Supp. 2d at 446.

[127] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

[128] Fed. R. Civ. P. 23(a).

Rule 23(a) directs that the class be "so numerous that joinder of all members is impracticable."[129] No specific threshold exists, but "a class size of forty or more will generally suffice in the First Circuit."[130] The Class includes ███████ purchasers of SculpSure, according to Cynosure's records,[131] which easily satisfies the numerosity requirement.[132]

### 2. Common questions regarding Cynosure's deceptive tactics establish commonality.

Rule 23(a) also requires that "there are questions of law or fact common to the class"[133]—a "low hurdle."[134] "[F]or purposes of Rule 23(a)(2) even a single common question will do."[135] And in the context of Rule 23(c)(4) certification, the very issues that "this class action is designed to resolve meet [the commonality] requirement."[136] To illustrate, this case involves one manufacturer (Cynosure) and one product (SculpSure).[137] Cynosure implemented a uniform sales scheme built around the supposed key attributes of SculpSure (which Plaintiffs contends are not true). It is a question common to the entire Class whether the representations characterizing SculpSure as a one-time treatment, painless, and hands-free amount to deceptive acts under Massachusetts law. This question meets the commonality requirement.

---

[129] Fed. R. Civ. P. 23(a)(1).

[130] *Reid v. Donelan*, 297 F.R.D. 185, 188–89 (D. Mass. 2014), *enforcement granted*, 64 F. Supp. 3d 271 (D. Mass. 2014).

[131] Fact Proffer, ¶ 20.

[132] *See, e.g.*, *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 285 (D. Mass. 2015) (numerosity "easily satisfied" with class size of approximately 100 individuals).

[133] Fed. R. Civ. P. 23(a)(2).

[134] *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 10 (D. Mass. 2010).

[135] *Dukes*, 564 U.S. at 359 (internal citations, alterations, and quotation marks omitted); *Donovan*, 268 F.R.D. at 10 ("A single factual issue can suffice.").

[136] *Payton v. Abbott Labs*, 83 F.R.D. 382, 387 (D. Mass. 1979), *vacated on other grounds*, 100 F.R.D. 336 (D. Mass. 1983).

[137] *See Donovan*, 268 F.R.D. at 10.

**3.** **Plaintiffs' claims are typical of the Class where they pursue the same consumer fraud claims for the same alleged deceptive acts regarding the same product.**

Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[138] "The plaintiff can meet this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class."[139] All purported class members pursue the same consumer fraud claims under Chapter 93A; in other words, "the claims of [named Plaintiffs] and the claims of the proposed class are based on the same legal theory and fact pattern."[140] Therefore, Plaintiffs have met the typicality requirement of Rule 23(a)(3).

**4.** **Plaintiffs have proven that they will adequately protect the Class through their demonstrated commitment and effort in litigating this matter to date.**

The final Rule 23(a) prerequisite, adequacy, directs that "the representative parties will fairly and adequately protect the interests of the class."[141] The named Plaintiffs have already invested significant effort litigating their claims on behalf of the Class. They have interrupted their day-to-day business operations to comply with discovery obligations. They have spent hours working with counsel to prepare interrogatory responses, produced thousands of sensitive documents from their businesses, and offered numerous employees and former employees to sit for depositions.[142] Likewise, Plaintiffs' counsel has poured significant resources into litigating

---

[138] Fed. R. Civ. P. 23(a)(3).

[139] *In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009).

[140] *Id.*

[141] Fed. R. Civ. P. 23(a)(4).

[142] Fact Proffer, ¶¶ 104-118.

this matter and will continue to vigorously represent the interests of the Class. It therefore

requests appointment as class counsel under Rule 23(g).[143] Rule 23(a)(4) is satisfied.

**D.    Common issues predominate with respect to the four issues that Plaintiffs seek to certify under Rule 23(c)(4).**

Predominance analysis in the context of issue certification differs from that of a

traditional Rule 23(b)(2) analysis. While the general inquiry remains the same—that is, the Court

must determine whether "the class is a sufficiently cohesive unit" by examining if the issues are

"susceptible to generalized, class-wide proof"—the Court need not conduct that inquiry with

respect to the entire action.[144] In other words, "[e]ven if the common questions do not

predominate over the individual questions so that class certification of the entire action is

warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues

under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."[145] Each of

the four issues that Plaintiffs seek to certify require only "generalized, class-wide proof," making

them ideal for class treatment.

**1.    Whether Cynosure engaged in "trade or business" when it designed, marketed, and sold SculpSure to consumers will be true for all class members.**

The first issue that Plaintiffs move to certify asks, "Was Cynosure engaged in 'trade or

business' when it sold SculpSure to Plaintiffs and the Class?" While the answer may be self-

evident, Plaintiffs will prove  it using common evidence. To prove this element of their claim,

Plaintiffs must show that Cynosure engaged in "the advertising, the offering for sale, rent or

---

[143] *See* Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, filed contemporaneously.

[144] *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 226-28 (internal citations and quotation marks); *see also In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *1 (citing *Tardiff*, 365 F.3d at 7).

[145] *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

lease, the sale, rent, lease or distribution of any services and any property[.]"[146] As the above facts demonstrate, Cynosure is a for-profit company that designed, marketed, and sold SculpSure to practices throughout the country.[147] And that basic fact will not change from one class member to the next given that the Class only includes purchasers of the device.[148] Common issues therefore predominate with respect to the first proposed issue.

> **2.   Chapter 93A, Section 11, employs an objective standard to determine whether an act was deceptive, rendering the remaining issues ideal for class-wide resolution.**

The remaining three issues ask whether Cynosure's representations that SculpSure is a one-time, painless, and hands-free treatment violate Chapter 93A of the Massachusetts Consumer Protection Act. Specifically, the second element of a Chapter 93A claim asks whether the defendant engaged in "deceptive acts or practices."[149] The Massachusetts Superior Court Civil Practice Jury Instructions define a "deceptive" act or practice as "simply one that has the capacity to deceive. An act or practice is deceptive if it could reasonably cause a person to act differently from the way [he/she] would act if [he/she] knew the truth about the matter."[150] Importantly, the inquiry does not focus on the actions of the Plaintiffs or any purchaser: "[a] successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false."[151]

---

[146] MASS. GEN. LAWS ANN. ch. 93A, § 1.

[147] *See supra* §§ II.A and II.B-C.

[148] *See* Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

[149] *Brandon Assocs., LLC*, 384 F. Supp. 2d at 446.

[150] Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.2.

[151] *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004) (internal citations omitted).

Instead, "[w]hether conduct is deceptive is initially a question of fact, *to be answered on an objective basis*."[152] So the answer to whether Cynosure engaged in any deceptive acts or practices will necessarily turn on common evidence.[153] In fact, the Massachusetts Superior Court Civil Practice Jury Instructions explicitly informs the jury that when "determin[ing] whether the defendant committed an unfair or deceptive act or practice[,] … [*f*]*ocus on the nature of the conduct that the complaint is about and the purpose and effect of that conduct*."[154]

To that end, common evidence will be used at trial to prove that the relevant representations had the "capacity to deceive" a reasonable person.[155] A review of that evidence demonstrates that common questions predominate over any individualized issues.

First, with respect to the question whether the representation that SculpSure was a one-time treatment was deceptive, Plaintiffs will present common proof at trial. Plaintiffs will present evidence that a one-time treatment was important to a purchaser of non-invasive body contouring devices, as reflected by ███████████████████████████████████, and the opinion of Plaintiffs' expert Dr. Anna Bar.[156] ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[152] *Id.* (emphasis added).

[153] *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class[.]").

[154] Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.1(b) (emphasis added); *Aspinall*, 442 Mass. at 394 ("In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which the act or practice might reasonably be expected to have[.]" (quoting *Leardi v. Brown*, 394 Mass. 151, 156 (1985)) (internal alteration omitted)).

[155] Massachusetts Superior Court Civil Practice Jury Instructions § 16.4.2.

[156] Fact Proffer, ¶¶ 21-33; Bar Report, ¶ 23.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████[157] And Plaintiffs will present proof

at trial that SculpSure is not effective in a one-time treatment, including ████████

████████████████████████████████████████████████████████████████████████

███████████████, and Plaintiffs' expert Dr. Nathaniel M. Fried, who will testify that

SculpSure is unlikely to produce any meaningful results from a single treatment and incapable of

being both effective and painless.[158] Proving that Cynosure's misrepresentation that SculpSure

was a one-time treatment had the capacity to deceive a purchaser is not individual to any Class

member.

Likewise, common evidence will predominate at trial to answer the question whether

Cynosure engaged in a deceptive act or practice by representing SculpSure as "painless" or

"pain-free" or "comfortable." Plaintiffs will present evidence and testimony from ███████████

████████████████████████████████████████ that a painless procedure was necessary to

compete in the non-invasive body-contouring market.[159] Plaintiffs' expert Dr. Anna Bar will

confirm Cynosure's admissions, explaining why pain-free treatments were preferred by

practitioners when selling in-office treatments.[160] ███████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████.[161] And Plaintiffs will present proof at trial that Cynosure knew that a

---

[157] *Id.* ¶¶ 34-103.

[158] *Id.*; Fried Report, ¶ 14.

[159] Fact Proffer, ¶¶ 21-33.

[160] Bar Report, ¶ 28.

[161] Fact Proffer, ¶¶ 52-75; Fried Report, ¶ 14.

SynoSure treatment ███████████ and will never be pain free.[162] Plaintiffs' expert Dr. Fried

will opine that SculpSure is incapable of being both effective and painless due to its inability to

control the undesirable conduction (or leakage) of thermal energy.[163] Thus, proving that

Cynosure's misrepresentation that SculpSure was a painless treatment had the capacity to

deceive a purchaser is not individual to any Class member.

Finally, common evidence will predominate at trial to answer the question whether

Cynosure engaged in a deceptive act or practice by representing SculpSure as a "hands-free"

treatment. Plaintiffs will present evidence and testimony ████████████████████

███████████████████ that a device that did not require a practitioner to stay in the room

with a treatment was a desirable attribute.[164] Plaintiffs' expert Dr. Anna Bar will testify that this

attribute is material to prospective purchasers who must consider staffing, time constraints, and

operator credentials when considering a device purchase.[165] ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ [166] Buttressing the admissions by Cynosure's Clinical Department that practitioners

could not leave patients alone, Plaintiffs' expert Dr. Nathaniel Fried will opine that SculpSure

does not include any method or system for monitoring the target temperature range for the

treatment, and that SculpSure lacks control of the heating effect it relies on to achieve an

effective treatment.[167] Thus, proving that Cynosure's misrepresentation that SculpSure was a

---

[162] Fact Proffer, ¶¶ 34-51.

[163] Fried Report, ¶ 14.

[164] Fact Proffer, ¶¶ 21-33.

[165] Bar Report, ¶¶ 32-35.

[166] Fact Proffer, ¶¶ 34-51.

hands-free treatment had the capacity to deceive a purchaser is not individual to any Class member.

In short, common questions of fact—and the common evidence to be used to prove those questions—predominate. The common evidence will demonstrate at trial that the relevant misrepresentations could "reasonably cause a [business] to act differently," meeting the standard under Chapter 93A. And crucially, this proof will not differ from class member to class member.

### E.   Certification of these issues would materially advance the litigation and remains the superior method to litigate the claims of Plaintiffs and the Class.

As a final matter, certification of an issue class "offers several legal and practical advantages in this case."[167] First, certifying the four issues above avoids the need to re-litigate them in separate trials. Following one trial to resolve these four issues, class members could then "choose to proceed with their claims individually" to prove causation and damages.[169] This proves beneficial not only for Plaintiffs, but also for Cynosure and the Court. Whereas, "[v]ictory for the plaintiffs will go far towards bringing them recovery," victory for Cynosure will dispose of the Chapter 93A claims entirely.[170] And the Court benefits from their efficient resolution.[171]

Litigating the deceptive nature of Cynosure's conduct will likely prove to be both the most time consuming part of any trial here. It will involve the largest body of evidence, the most witnesses, and expert testimony. And because it involves a solely objective inquiry, this aspect of

---

[167] Fried Report, ¶¶ 27, 35.

[168] *In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *2.

[169] *Id.*

[170] *Payton*, 83 F.R.D. at 392.

[171] *Id.*; *see also George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 183 (D. Mass. 2012) ("[F]or reasons of consistency and economy—both for the litigants and the courts—these issues should be decided once in a uniform manner on a class basis rather than being repeatedly litigated through individual lawsuits.").

any individual trial will be identical, no matter the plaintiff. Thus, absent issue certification, the parties would present the same evidence, same witnesses, and same experts in front of many different juries.[172] Not only would this be a redundant and wasteful exercise for all involved, it risks the possibility of inconsistent adjudications.[173] For these reasons, "[a] number of cases have held class certification to be appropriate where common issues important to the litigation can be resolved on a class-wide basis even though the common issues may not be dispositive."[174]

Lastly, partial certification makes practical sense given the realities of the ongoing litigation by other plaintiffs in separate actions. To date, forty additional plaintiffs have filed individual cases with identical claims in *WBM Medical Associates, LLC, et al. v. Cynosure, Inc.*,[175] and *Ederra Plastic Surgery, P.C., et al. v. Cynosure, Inc.*[176] With these actions already in tow, the Court can see precisely how certification under Rule 23(c)(4) would advance their claims, and move any aggrieved purchasers meaningfully closer to the relief they seek.

## IV.   CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

---

[172] *In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *2.

[173] *Id.*; *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 487 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ("Because I am certifying the consumer fraud class as to the issue of liability only, and damages will be handled individually, issues will not be overlapping, and the same issue will not be reexamined by different juries.").

[174] *McQuilken v. A & R Dev. Corp.*, 576 F. Supp. 1023, 1031 (E.D. Pa. 1983).

[175] Compl., *WBM Med. Assocs., LLC, et al. v. Cynosure, Inc.*, No. 1:18-cv-11269-DJC, ECF No. 1 (D. Mass. June 18, 2018).

[176] Compl., *Ederra Plastic Surgery, P.C., et al. v. Cynosure, Inc.*, No. 1:19-cv-10164-DJC, ECF No. 1 (D. Mass. Jan. 24, 2019).

Dated: February 20, 2019                    Respectfully Submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Lauren Guth Barnes*
    Lauren Guth Barnes (BBO# 663819)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
E-mail: lauren@hbsslaw.com

Elizabeth A. Fegan
Daniel J. Kurowski
Mark T. Vazquez
HAGENS BERMAN SOBOL SHAPIRO LLP
455 Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
E-mail: beth@hbsslaw.com
E-mail: dank@hbsslaw.com
E-mail: markv@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com

David Freydin
Timothy A. Scott
FREYDIN LAW FIRM LLP
8707 Skokie Blvd # 305
Skokie, IL 60077
Telephone: (847) 972-6157

*Attorneys for Plaintiffs, Individually and on Behalf of All Others Similarly Situated*

010674-11 1090797 V2

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 20, 2019, a copy of the foregoing was filed

electronically. Notice of this filing will be sent to the attorneys of record by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ *Lauren Guth Barnes*
Lauren Guth Barnes

010674-11 1090797 V2