# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITA 4 LIFE, INC., | Case No. 17-cv-11435 (Consol.) |
| Plaintiff, | Hon. Denise J. Casper |
| v. | |
| CYNOSURE, INC., | |
| Defendant. | |
| PLASTIC SURGERY ASSOCIATES, S.C., *et al.*, | Case No. 17-cv-11850 (Consol.) |
| Plaintiffs, | Hon. Denise J. Casper |
| v. | |
| CYNOSURE, INC., | |
| Defendant. | |

**DEFENDANT CYNOSURE, INC.'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.  NONE OF PLAINTIFFS' ARGUMENTS CAN SAVE THEIR CH. 93A
    CLAIMS. ...................................................................................................................... 2

    A.  Plaintiffs Cannot Use The Choice of Law Clause To End-Run the Territorial
        Limitations of Ch. 93A. ................................................................................... 2

    B.  Plaintiffs Fail To Create An Issue of Fact As To Whether The Conduct Relevant
        to Their Ch. 93A Claims Took Place "Primarily and Substantially" in
        Massachusetts. ................................................................................................. 6

II. PLAINTIFFS PRESENT NO EVIDENCE TO DEFEAT CONTRACT
    FORMATION OR WHICH AVOIDS THE WARRANTY DISCLAIMER. ................ 9

III. PLAINTIFFS FAIL TO EXPLAIN HOW THEIR UNJUST ENRICHMENT
     CLAIM IS VIABLE GIVEN THE AVAILABLE REMEDIES AT LAW. ................ 11

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

                                                                                                          **Page(s)**

**Cases**

*Acbel Polytech Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   2016 WL 7197368 (D. Mass. Dec. 9, 2016) (Casper J.) ......................................................... 8

*Aceros Prefabricados, S.A. v. TradeArbed, Inc.*,
   282 F.3d 92 (2d Cir. 2002) ................................................................................................... 10

*Artuso v. Vertex Pharm., Inc.*,
   637 F.3d 1 (1st Cir. 2011) ....................................................................................................... 9

*Benefit Mgmt. of Maine, Inc. v. Allstate Life Ins. Co.*,
   1993 WL 177120 (1st Cir. 1993) ........................................................................................... 5

*Cal. Ass'n of Realtors, Inc. v. PDFfiller, Inc.*,
   2018 WL 1403330 (D. Mass. Mar. 2, 2018) .......................................................................... 7

*Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*,
   139 F.3d 1396 (11th Cir. 1998) .............................................................................................. 5

*Constr. Fasteners, Inc. v. Digital Equip. Co. Inc.*,
   1996 WL 33348735 (Mich. Ct. App. Oct. 22, 1996) ........................................................... 10

*Controlled Kinematics, Inc. v. Novanta Corp.*,
   2017 WL 5892200 (D. Mass. Nov. 29, 2017) ........................................................................ 7

*Cromeens, Holloman, Sibert, Inc v. AB Volvo*,
   349 F.3d 376 (7th Cir. 2003) .................................................................................................. 5

*Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*,
   605 S.E.2d 375 (Ga. App. 2004) .......................................................................................... 10

*Davis v. Miller*,
   7 P.3d 1223 (Kan. 2000) ........................................................................................................ 4

*Devona v. Zeitels*,
   2016 WL 4468553 (D. Mass. Aug. 23, 2016) ...................................................................... 11

*Dow v. Casale*,
   989 N.E.2d 909 (2013) ....................................................................................................... 4, 5

*First Sec. Bank, N.A. v. Nw. Airlines, Inc.*,
   2001 WL 92175 (D. Mass. 2001) ........................................................................................... 3

*Fishman Transducers, Inc. v. Paul*,
  684 F.3d 187 (1st Cir. 2012) ................................................................................................ 1, 6

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
  323 F.3d 1219 (9th Cir. 2003) .................................................................................................. 5

*Green v. Ablon*,
  794 F.3d 133 (1st Cir. 2015) .................................................................................................. 10

*Hall v. Sprint Spectrum L.P.*,
  876 N.E.2d 1036 (Ill. Ct. App. 2007) ................................................................................. 4, 5

*Highway Equip. Co. v. Caterpillar Inc.*,
  908 F.2d 60 (6th Cir.1990) ....................................................................................................... 5

*Infomax Office Sys., Inc. v. MBO Binder & Co. of Am.*,
  976 F. Supp. 1247 (S.D. Iowa 1997) ................................................................................... 4, 5

*Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*,
  971 N.E.2d 1183 (Ill. Ct. App. 2012) ...................................................................................... 5

*Kitner v. CTW Transp., Inc.*,
  762 N.E.2d 867 (Mass. App. Ct. 2002) ................................................................................... 3

*Kuwaiti Danish Comp. Co. v. Digital Equipment Corp.*,
  438 Mass. 459 (2003) ............................................................................................................... 7

*Lass v. Bank of America, N.A.*,
  695 F.3d 129 (1st Cir. 2012) .................................................................................................. 11

*Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*,
  514 F. App'x 365 (4th Cir. 2013) .......................................................................................... 10

*Mahoney v. RBS Citizens, N.A.*,
  919 N.E.2d 717 (Mass. Ct. App. 2010) ................................................................................. 10

*McDonalds Corp. v. C.B. Mgmt. Co.*,
  13 F. Supp. 2d 705 (N.D. Ill. 1998) ......................................................................................... 5

*Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems, Co.*,
  986 F.2d 607 (1st Cir. 1993) ................................................................................................ 2, 3

*Pagliaroni v. Mastic Home Exteriors, Inc.*,
  310 F. Supp. 3d 274 (D. Mass. 2018) (Casper, J.) ............................................................ 2, 11

*Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*,
  892 F.2d 355 (4th Cir. 1989) .................................................................................................... 5

*Robert Bosch Corp. v. ASC Inc.*,
    195 F. App'x 503 (6th Cir. 2006) ..................................................................................10

*Schlesinger v. Super. Ct.*,
    2010 WL 3398844 (Cal. Ct. App. 2010) ......................................................................4, 5

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) ............................................................................................2, 11

*Sonoran Scanners v. Perkinelmer, Inc.*,
    585 F.3d 535 (1st Cir. 2009) ....................................................................................1, 5, 6

*Spring Investor Servs., Inc. v. Carrington Capital Mgmt., LLC*,
    2013 WL 1703890 (D. Mass. Apr. 18, 2013) ....................................................................7

*Standard Register Co. v. Bolton-Emerson, Inc.*,
    649 N.E.2d 791 (Mass. App. Ct. 1995) .............................................................................4

*Taylor v. E. Connection Operating, Inc.*,
    988 N.E.2d 408 (Mass. 2013) ......................................................................................4, 5

*Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*,
    399 F.3d 33 (1st Cir. 2005) ................................................................................1, 3, 6, 7

*Vertex Surg., Inc. v. Paradigm Biodevices, Inc.*,
    390 Fed. App'x 1 (1st Cir. 2010) ..................................................................................2, 3

*Veyssi v. FedEx Corp.*,
    2009 WL 10692816 (D. Mass. Aug. 4, 2009) .................................................................10

**Statutes**

Illinois Franchise Disclosure Act ..............................................................................................5

Mass. Gen. L. Ch. 93A ..................................................................................................... *passim*

Massachusetts Wage Act ..........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8(3)(d) ..............................................................................................................11

Fed. R. Civ. P. 56 ....................................................................................................................12

L.R. 56.1 .........................................................................................................................6, 7, 12

# INTRODUCTION

Plaintiffs concede that the alleged misrepresentations, Plaintiffs' exposure to them, their purchases of the SculpSure devices, and Plaintiffs' alleged injuries all occurred outside of Massachusetts. Yet Plaintiffs' Opposition seeks to dodge the requirement that their Massachusetts Ch. 93A claims "primarily and substantially" involve in-state conduct by relying on the purchase contract's choice of law clause. This argument gets them nowhere. The choice of law clause by its terms applies to contract construction, not tort claims such as the alleged misrepresentations at issue. And even if it did apply, the clause would not override the geographic limitations of Ch. 93A, which are part of Massachusetts' substantive law.

Plaintiffs also fail to heed clear First Circuit precedent applying Massachusetts' territorial limitation on that statute where the claimed misrepresentations were made and alleged harm occurred out-of-state. *See Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 189, 197 (1st Cir. 2012); *Sonoran Scanners v. Perkinelmer, Inc.*, 585 F.3d 535, 546 (1st Cir. 2009); *Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*, 399 F.3d 33, 44 (1st Cir. 2005). Plaintiffs offer no precedent to the contrary.

There is nothing unjust about dismissing their Ch. 93A claims under these circumstances. In the apparent hope that it would ease class certification, Plaintiffs made a tactical decision to sue under Ch. 93A rather than the laws of the various states where they reside and claim exposure to misrepresentations. Having made that choice, they cannot rightfully complain about the limitations of Massachusetts law.

Plaintiffs' contract arguments fare no better. Their assertion that Cynosure failed to establish contract formation blithely ignores the signed contracts, deposition testimony of Plaintiffs, and even Plaintiffs' own statement of facts. And the claim that certain Plaintiffs were

not furnished the terms and conditions page fails because those terms are incorporated by reference immediately above Plaintiffs' signatures on the contracts.

Finally, Plaintiffs offer no response to the legion of cases holding that unjust enrichment does not lie where an adequate remedy at law is available, irrespective of whether that remedy is viable. *See, e.g., Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 293 (D. Mass. 2018) (Casper, J.). Plaintiffs are pursuing legal remedies under Ch. 93A § 11, and summary judgment on the unjust enrichment claims should accordingly be granted.

## ARGUMENT

### I. NONE OF PLAINTIFFS' ARGUMENTS CAN SAVE THEIR CH. 93A CLAIMS.

#### A. Plaintiffs Cannot Use The Choice of Law Clause To End-Run the Territorial Limitations of Ch. 93A.

Plaintiffs' argument that the choice-of-law clause in the parties' agreements trumps the territorial limitation of the statute fails because that clause applies only to claims sounding in contract -- not tort claims such as the Ch. 93A § 11 allegations in this case.

The scope of the choice of law provision is dictated by its language. The provision at issue here is limited to disputes that relate to the construction of the contract. It reads: "This Agreement shall be governed and construed under the substantive laws of the Commonwealth of Massachusetts."[1] Compl. ¶¶ 11, 13-16, 18; SOF ¶¶ 7-9. Courts in this Circuit have repeatedly construed similar choice-of-law clauses to exclude tort claims.

In *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems, Co.*, 986 F.2d 607 (1st Cir. 1993), for example, the parties' contract specified that "[t]his Agreement and the

---

[1] The contract here also contains a forum selection clause, which states: "The Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a court in Boston, Massachusetts." The broad language of the forum selection clause reinforces the comparatively narrow scope of the choice of law clause. *See Vertex Surg., Inc. v. Paradigm Biodevices, Inc.*, 390 Fed. App'x 1, 3 (1st Cir. 2010).

Defendant's Reply In Support Of Motion For Summary Judgment

2

rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of California." *Id*. at 609. The 93A claims which were merely breach of contract claims dressed up with added "state of mind" and "bad motive" allegations were within the scope of the choice-of-law clause. *Id*. at 611. But the Court ruled that the fraud claim -- that defendant had deceived plaintiff into entering an exclusive distribution contract -- "cannot be categorized as one involving the rights or obligations arising under the contract" and therefore "falls outside of the contract's choice of law provision." *Id*.; *see also, e.g.*, *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 390 Fed. App'x 1, 2 (1st Cir. 2010) (choice of law clause stating that "Massachusetts law exclusively shall govern all terms of this Agreement" applies only to construction of the contract, not statutory claims); *First Sec. Bank, N.A. v. Nw. Airlines, Inc.*, 2001 WL 92175, at *3 & n. 8 (D. Mass. 2001) (choice-of-law clause stating that agreement would be "governed" by Minnesota law did not preclude Ch. 93A § 11 claim sounding in tort, but granting summary judgment because conduct did not occur "primarily and substantially" in Massachusetts); *Uncle Henry's*, 399 F.3d 33, 44 n. 7 (parties conceded that Maine choice of law provision not controlling as to misrepresentation claims).

*Northeast Data Systems* involved a choice of law provision exactly like this one. Compl. ¶¶ 11, 13-16, 18. SOF ¶¶ 7-9. The deceit allegations in *Northeast Data Systems* also mirror the ones at issue here: Plaintiffs claim that Cynosure's "material misrepresentations" were "an aggressive campaign to induce Plaintiffs and the class to purchase the almost $200,000 machine." Compl. ¶ 2; *see also id*. ¶¶ 59; 81; 93; 104; 114 (alleging that each Plaintiff purchased SculpSure "based on" or in reliance on alleged misrepresentations). The same result must therefore follow here. *See also, e.g.*, *Kitner v. CTW Transp., Inc.*, 762 N.E.2d 867, 871 (Mass. App. Ct. 2002) (finding Ch. 93A claims based on misrepresentation sound in tort and therefore

fell outside scope of choice of law clause); *Standard Register Co. v. Bolton-Emerson, Inc.*, 649 N.E.2d 791, 794 (Mass. App. Ct. 1995) ("the misrepresentations . . . are at the core of [plaintiff's] claim for a violation of G.L. c. 93A, § 11, thereby making it a chapter 93A claim which sounds in tort rather than contract.").

The cases Plaintiffs cite with similar choice of law provisions are inapt because they do not allege fraud in the inducement of the contract or similar claims. Instead, they all in one way or another sought to ***enforce*** the contract. In *Taylor v. E. Connection Operating, Inc.*, 988 N.E.2d 408, 411 n.7 (Mass. 2013), plaintiffs claimed they were misclassified as independent contractors under the contract terms, an allegation that "clearly falls within the scope of the [choice of law] clause, as the question of classification bears directly on the proper construction of the contract." *Dow v. Casale*, 989 N.E.2d 909 (2013) similarly involved an action for payment of bonuses and other benefits due under an employment contract.[2]

The only case Plaintiffs cite involving a misrepresentation claim does not help them because the choice of law provision there was much broader and by its terms covered misrepresentation and fraud in the inducement claims. *Schlesinger v. Super. Ct.*, 2010 WL 3398844, at *1 (Cal. Ct. App. 2010) (interpreting choice of law provision stating that "if you have a dispute and your dispute involves an event (or a ticket for an event) . . . then the dispute will be governed by the laws of the State of California . . .").

Finally, the parties cannot expand the geographic scope of a statute through a choice of law clause. Restrictions on a statute's scope are part of a State's substantive law and are fully

---

[2] *See also Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036 (Ill. Ct. App. 2007) (validity of termination fees in wireless contract); *Davis v. Miller*, 7 P.3d 1223, 1226 (Kan. 2000) (enforceability of post-nuptial agreement); *Infomax Office Sys., Inc. v. MBO Binder & Co. of Am.*, 976 F. Supp. 1247, 1249 (S.D. Iowa 1997) (challenge to provision of dealer agreement stating that it could be terminated "with or without cause.").

incorporated when that law is chosen. Thus, "[w]hen a law contains geographical limitations on its application . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply."[3] For example, in *Sonoran Scanners*, the First Circuit brushed aside the parties' choice of law clause, holding that "[t]he fact that the Purchase Agreement provided that Massachusetts law would govern does not require a finding that the center of gravity for Chapter 93A liability is in Massachusetts." *Sonoran Scanners*, 585 F.3d at 546; *see also Benefit Mgmt. of Maine, Inc. v. Allstate Life Ins. Co.*, 1993 WL 177120 at *7 (1st Cir. 1993) (Illinois Franchise Act, which applies only to Illinois franchisees, was unavailable to Maine dealership despite selection of Illinois law in franchise agreement). The Eleventh Circuit likewise has summarily rejected the exact argument Plaintiffs make here, calling it "unpersuasive." *See Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, n. 21 (11th Cir. 1998). Because the choice of law clause cannot vitiate Ch. 93A's territorial restrictions, summary judgment on that claim is warranted even if Plaintiffs were right that the clause applied here.[4]

---

[3] *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003). *See also, e.g.*, *Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60 (6th Cir.1990) (applying territorial limitation in Illinois Franchise Disclosure Act even though contract selected Illinois law); *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 384–85 (7th Cir. 2003) ("a state's territorial limitations apply even when that state's law is selected . . . by a choice-of-law provision"); *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 358 (4th Cir. 1989) (applying choice of law clause selecting New York law and rejecting claims under New York laws with territorial limitations).

[4] Plaintiffs' cases are not to the contrary. In *Schlesinger* and *Taylor*, the statutes at issue had no express territorial limitation to override. *Schlesinger*, 2010 WL 3398844 at * 7 (distinguishing cases applying territorial limitations because "there is no such express geographical restriction" in the UCL); *Taylor*, 988 N.E.2d at 413 ("[W]here no explicit limitation is placed on a statute's geographic reach, there is no presumption against its extraterritorial application in appropriate circumstances."). The court in *Dow* similarly rejected the argument that the Massachusetts Wage Act had a territorial limitation. *Dow*, 989 N.E.2d at 913. And *Infomax* and *Hall* have been criticized extensively. *See, e.g., McDonalds Corp. v. C.B. Mgmt. Co.*, 13 F. Supp. 2d 705, 714 (N.D. Ill. 1998) ("However, we find this reasoning [of *Infomax*] unpersuasive since it clearly is the Illinois law that is being given extraterritorial effect"); *Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 971 N.E.2d 1183, 1190 (Ill. Ct. App. 2012) ("[W]e disagree

### B. Plaintiffs Fail To Create An Issue of Fact As To Whether The Conduct Relevant to Their Ch. 93A Claims Took Place "Primarily and Substantially" in Massachusetts.

Plaintiffs concede that the alleged misrepresentations at issue were made and their impact felt outside of Massachusetts where each Plaintiff resides, purchased, and used the device. *See* L.R. 56.1 (facts not contested are deemed admitted). On these facts, Plaintiffs cannot avoid dismissal under governing First Circuit law. Mot. at 7-8 (citing, *e.g., Fishman Transducers,* 684 F.3d at 189, 197; *Sonoran Scanners*, 585 F.3d at 546; *Uncle Henry's*, 399 F.3d at 44).

Plaintiffs' Opposition ignores the holdings of this binding precedent:

- Plaintiffs make no attempt whatsoever to distinguish *Sonoran Scanners*, which held that no 93A claim could be asserted against a Massachusetts-based company where the plaintiff "received and acted upon [defendant's] allegedly deceptive conduct in Arizona." *Sonoran Scanners*, 585 F.3d at 546.

- They weakly suggest that plaintiff in *Fishman Transducers* did not make the best arguments available. Opp. at 15. But they do not contest that the case squarely held that "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 cannot be satisfied." *Fishman Transducers*, 684 F.3d at 197.

- Plaintiffs try to distinguish *Uncle Henry's* on the grounds that neither party resided in Massachusetts. Opp. at 16. But *Uncle Henry's* made no mention of the situs of the parties, holding that the decision of the judge below "was correct, especially in view of his finding that 'the alleged misrepresentations were

---

with [*Hall's*] reasoning that a contractual choice-of-law provision will always take priority over a statutory territorial limitation").

received primarily in Maine, where their impact primarily was felt.'" *Uncle Henry's*, 399 F.3d at 45.

These cases could not be clearer in establishing that Ch. 93A does not apply where all of the alleged misrepresentations were made and caused the alleged harm outside of Massachusetts.

In contrast, Plaintiffs muster no cases finding Ch. 93A claims viable where the alleged misrepresentations were all made out-of-state and caused injury to a party residing outside Massachusetts. *Controlled Kinematics* merely found the issue unsuitable for decision at the pleading stage, and (unlike here) involved multiple communications to plaintiff from Massachusetts. *See Controlled Kinematics, Inc. v. Novanta Corp.*, 2017 WL 5892200, at *4 (D. Mass. Nov. 29, 2017) (motion to dismiss "generally not an appropriate vehicle" for center of gravity inquiry). *Cal. Ass'n of Realtors, Inc. v. PDFfiller, Inc.*, 2018 WL 1403330 (D. Mass. Mar. 2, 2018) is another pleadings case, which centered around conduct relating to a website operated in Massachusetts. And *Kuwaiti Danish Comp. Co. v. Digital Equipment Corp.*, 438 Mass. 459 (2003) itself rejected application of Ch. 93A where (as here) the contract negotiations at issue took place outside of Massachusetts. Plaintiffs' recitation that the "center of gravity" test "will be fact intensive and unique to each case" does not help them when the case law uniformly rejects application of Ch. 93A under facts resembling those here.

Finally, Plaintiffs' one-sided, "kitchen sink" collection of facts which attempts to portray a Massachusetts "center of gravity" is immaterial because Plaintiffs never link any claimed misconduct to ***these*** Plaintiffs' specific claims of misrepresentation.[5] *See Spring Investor Servs.,*

---

[5] Plaintiffs fail to respond to Defendant's Statement of Material Facts, and therefore they are all deemed admitted. L.R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."). Instead of responding to the pertinent facts, Plaintiffs' Statement of Materials Facts is a lengthy screed accusing the company of misconduct which has no bearing on the legal bases for Defendant's motion. Cynosure vigorously

*Inc. v. Carrington Capital Mgmt., LLC*, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013) ("in determining the center of gravity . . . courts focus solely on the actionable conduct said to give rise to the violation; other conduct, no matter where it takes place, may not be considered."); *Acbel Polytech Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2016 WL 7197368, at *15 (D. Mass. Dec. 9, 2016) (Casper J.) (disregarding alleged connections to Massachusetts because "none of these contentions are the deceptive and unfair conduct that AcBel alleges as the basis of this Mass. Gen. L. c. 93A claim"). While Plaintiffs assert that Cynosure created certain marketing materials that contained alleged misrepresentations in Massachusetts (Opp. at 5-8, 13-14), they do not argue or present evidence that any Plaintiff in this lawsuit was actually exposed to any of the promotional materials they cite. Rather, it is uncontested that Plaintiffs purchased the devices based on face-to-face sales meetings and communications with local sales representatives. SOF ¶¶ 20, 34, 46, 60, 77, 78. And the fact that Cynosure is located in Massachusetts (Opp. at 3) or developed SculpSure in Massachusetts with the goal of having attributes distinct from competitors (Opp. at 3-5) is not even arguably deceptive conduct, and therefore irrelevant.

Plaintiffs are therefore bereft of any legal or factual support for their position that the conduct underlying their particular claims took place "primarily or substantially" in Massachusetts. Having decided to sue under Ch. 93A instead of the law of each state where they heard and allege damage from claimed misrepresentations, Plaintiffs are bound by the Massachusetts statute's territorial limitations, and their Ch. 93A claims must be dismissed.

---

disputes Plaintiffs' characterizations, but will not provide a point-by-point response because the factual assertions Plaintiffs make are immaterial.

## II. PLAINTIFFS PRESENT NO EVIDENCE TO DEFEAT CONTRACT FORMATION OR WHICH AVOIDS THE WARRANTY DISCLAIMER.

Plaintiffs do not contest that the SculpSure purchase agreements expressly and conspicuously disclaim implied warranties. Instead, Plaintiffs argue that Cynosure has failed to establish contract formation.

This argument is specious. For one thing, Plaintiffs expressly rely on the contract's choice of law provision; they cannot then be heard to argue that the contracts do not legally exist. Beyond that, Plaintiffs supply no evidence the contracts were invalid. The signed contracts themselves are attached to the Motion. SOF ¶ 6, Ex. 5-9. Each Plaintiff testified regarding their contracts. SOF ¶¶ 12-14 (Enhanced Images); ¶¶ 24-27 (Dermacare); ¶¶ 39-42 (Options Medical); ¶¶ 51-55 (Face Place); ¶¶ 65-67 (PSA). Plaintiffs' own statement of undisputed facts asserts that "Plaintiffs each purchased SculpSure by signing a Purchase Agreement provided by Cynosure." Pl. SOF ¶ 69.

Plaintiffs' alternative argument is that certain Plaintiffs did not receive the terms and conditions page of the contract which contains the disclaimer.[6] But the first page of the contract directly above the signature line states that the purchaser "accepts ***all of the terms and conditions*** as stated in this document *(including the following page(s))*." SOF ¶ 6 (emphasis added). Such incorporation by reference is "a common tool in the drafting of contracts." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 7 (1st Cir. 2011). "Unless incorporation by general reference

---

[6] Even if this argument had merit (and it does not), it would not apply to most Plaintiffs. Plaintiffs Options Medical and Plastic Surgery Associates do not raise this argument at all. Moreover, the owner and designated corporate representative of Plaintiff Enhanced Image Med Spa testified that she read and understood the terms and conditions on the second page of the contract, including the warranty limitation. SOF ¶¶ 13-14. Enhanced Image offers no contrary evidence other than saying that the version of the contract in its file is missing that page. Pl. SOF ¶ 75. Dermacare likewise asserts only that the copy of the contract in his files does not include the terms and conditions page. *Id.* ¶ 74. Yet Dermacare's principal and corporate representative was shown the full contract at his deposition and never claimed that he failed to receive or read that page. SOF ¶¶ 25-27, Ex. 13.

is explicitly rejected by some statute or regulation, incorporation by a clearly stated general reference will suffice." *See Green v. Ablon*, 794 F.3d 133, 144 (1st Cir. 2015) (citation omitted).

Courts therefore routinely hold parties to standard terms of sale that are incorporated by reference, despite denials that the terms were furnished or read. *See, e.g., Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006) (affirming summary judgment where language that "Bosch standard terms and conditions apply unless otherwise specified" was sufficient notice despite claim that terms were not furnished); *Veyssi v. FedEx Corp.*, 2009 WL 10692816, at *1 (D. Mass. Aug. 4, 2009) (summary judgment granted because plaintiff was bound by FedEx Service Guide incorporated by reference in airbill, despite claim that Guide was not readily available); *Mahoney v. RBS Citizens, N.A.*, 919 N.E.2d 717 (Mass. Ct. App. 2010) (summary judgment appropriate where terms and conditions were incorporated but plaintiff claimed not to have read them).[7]

Here, Plaintiffs are sophisticated, commercial purchasers buying a medical device for well over one hundred thousand dollars. They must reasonably expect some terms of sale to govern such a transaction. And the contracts plainly indicate the existence of those terms and

---

[7] *See also Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 514 F. App'x 365, 368-69 (4th Cir. 2013) ("[T]he party challenging incorporation need not have actually received the incorporated terms in order to be bound by them," especially where, as here, it is a "sophisticated business entit[y]," and where the contract "made clear reference to . . . the terms and conditions on the following pages"); *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 98 (2d Cir. 2002)("[P]laintiffs' failure to include the General Conditions of Sale with the confirmation orders does not prevent those terms from being included in its contract"); *Constr. Fasteners, Inc. v. Digital Equip. Co. Inc.*, 1996 WL 33348735, at *2 (Mich. Ct. App. Oct. 22, 1996) ("Although the standard terms and conditions were not attached to the letter of authorization, plaintiff was put on notice that they were incorporated by reference. Under such circumstances plaintiff will not be heard to claim that those terms were not applicable."); *Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*, 605 S.E.2d 375, 378 (Ga. App. 2004) (language that "we have read the sellers terms and conditions listed on this application and agree to be bound thereby," incorporated terms and conditions on second page despite signatory's contention it received only first page).

conditions of sale "on the following page(s)." This language is more than sufficient to put Plaintiffs on notice and bind them to the incorporated terms of sale.

### III. PLAINTIFFS FAIL TO EXPLAIN HOW THEIR UNJUST ENRICHMENT CLAIM IS VIABLE GIVEN THE AVAILABLE REMEDIES AT LAW.

Plaintiffs make no effort to distinguish their unjust enrichment claim from the ones dismissed in *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 293 (D. Mass. 2018) (Casper, J.), or any of the litany of cases cited in the Motion for the proposition that a claim for unjust enrichment cannot be maintained when a remedy at law is available. Mot. at 15 (collecting cases).

Instead, they argue that the "the Federal Rules of Civil Procedure permit alternative claims." Opp. at 19. But Plaintiffs cite Rule 8(3)(d), which governs pleading. And *Lass v. Bank of America, N.A.*, 695 F.3d 129, 140-41 (1st Cir. 2012) holds only that alternative claims are permissible "at the pleading stage" and expressly recognized that "the district court will be in a better position once the record is more developed to determine whether the unjust enrichment claim should survive."[8]

This is a motion for summary judgment, and fact discovery is closed. Plaintiffs nevertheless continue to press contract claims and seek remedies at law pursuant to Chapter 93A § 11. At this point, Plaintiffs cannot maintain their unjust enrichment claim as a backstop. *Shaulis*, 865 F.3d at 16. Plaintiffs' claims for unjust enrichment should therefore be dismissed.

---

[8] *Devona v. Zeitels*, 2016 WL 4468553, at *2 (D. Mass. Aug. 23, 2016) did not involve statutory legal remedies such as those sought by Plaintiffs here under Chapter 93A.

## CONCLUSION

For the reasons stated above, Defendant requests that the Court grant summary judgment pursuant to Fed. R. Civ. P. 56 and L.R. 56.1.

Dated:  May 29, 2019                               Respectfully submitted,

Arnold & Porter Kaye Scholer LLP

By: */s/ Jocelyn Wiesner*
Jocelyn Wiesner (*pro hac vice*)

Daniel S. Pariser (*pro hac vice*)
601 Massachusetts Ave., NW
Washington, DC 20001-3743
T: +1 202.942.5000
F: +1 202.942.5999
Daniel.Pariser@arnoldporter.com
Jocelyn.Wiesner@arnoldporter.com

Anand Agneshwar (*pro hac vice*)
Lori B. Leskin (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9170
T: +1 212.836.8000
F: +1 212.836.8639
Anand.Agneshwar@arnoldporter.com
Lori.Leskin@arnoldporter.com

George Langendorf (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4024
T: +1 415.471.3191
F: +1 415.471.3400
George.Langendorf@arnoldporter.com

Clements & Pineault LLP
Michael J. Pineault
225 Franklin Street, 26th Floor
Boston, MA 02110
T: +1 857.445.0135
F: +1 857.366.5404
mpineault@clementspineault.com

Attorneys for Defendant Cynosure, LLC, f/k/a/ Cynosure, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of May, 2019, the foregoing Reply In Support Of Motion For Summary Judgment was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          */s/ Jocelyn Wiesner*
                                          Jocelyn Wiesner